UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORA CARMICHAEL,<br>*as Mother and Next Friend of John Doe Minor Child*<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　　　v.<br><br>THREVIA WEST,<br><br>　　　　　　　　　　Defendant. | Civil Case No. 11-1513 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Nora Carmichael, mother and next friend of minor child John Doe, brings this action against Dr. Threvia West, M.D., for medical malpractice arising out of Dr. West's delivery of minor John Doe on August 30, 1998. *See* Compl., ¶¶ 1, 9, 13, 14, ECF No. 1. The plaintiff alleges that Dr. West's negligent conduct caused minor John Doe to become infected with human immunodeficiency virus (HIV) and to suffer from HIV encephalopathy, causing permanent brain damage. *Id.* ¶¶ 6, 17, 19. The plaintiff seeks recovery of $80,000,000 in compensatory damages, plus interest and costs. *Id.* at 5.

Pending before the Court is the defendant's motion to dismiss, in which the defendant argues that the plaintiff failed to comply with the notice requirement of the District of Columbia's Medical Malpractice Amendment Act ("MMA"), D.C. CODE § 16-2802 (2012). *See* Mem. of P&A in Supp. of Def.'s Mot. to Dismiss the Compl. or, in the Alternative, for Summ. J. ("Def.'s Mem."), at 1, ECF No. 7-1. This provision provides that "[a]ny person who intends to file an action alleging medical malpractice . . . shall notify the intended defendant of his or her action not less than 90 days prior to filing the action." D.C. CODE § 16-2802(a). The defendant

contends that this failure requires the Court to dismiss the case. *See* Def.'s Mem. at 5. The plaintiff responds, in the alternative, that either the MMA does not apply in federal court, she complied with the requirements of the statute, or her failure to comply with the statute should be excused or waived. *See* Mem. in Supp. of Pl.'s Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Pl.'s Mem.") at 6–13, ECF No. 8-2.

For the reasons discussed below, the Court concludes that D.C. CODE § 16-2802 is applicable to the plaintiff's claims, that the plaintiff failed to comply with the notice requirement prior to initiating suit, and that the plaintiff's failure to comply with the notice requirement cannot be excused based on good-faith efforts to comply or waived in the interests of justice. Failure to comply with the statutory notice requirement deprives the Court of its subject-matter jurisdiction to hear this case, and therefore the defendant's Motion to Dismiss must be GRANTED. The plaintiff's Complaint, however, shall be dismissed without prejudice and with leave to re-file in compliance with D.C. CODE § 16-2802(a).

## I. BACKGROUND

Plaintiff Nora Carmichael brought this diversity action as mother and next friend of John Doe, a minor child, against Threvia West, M.D., for medical malpractice arising out of Dr. West's medical care of minor John Doe. Compl. ¶ 17. The plaintiff is a resident of Fort Washington, Maryland, and the defendant resides in Washington, D.C. *Id.* ¶¶ 1-3.

On August 30, 1998, Sheila Moody, pregnant with minor John Doe, was admitted to D.C. General Hospital, where the defendant provided her with obstetric medical care.[1] *Id.* ¶¶ 8-9. The plaintiff alleges that the defendant knew Sheila Moody to be HIV positive at the time of delivery and that the defendant knew or should have known that performing a vaginal delivery, rather than a caesarian section, made the risk that the unborn fetus would be infected with HIV

---

[1] Sheila Moody, minor John Doe's natural mother, is since deceased. Compl. ¶ 12.

"50 times greater." *Id.* ¶¶ 12–13. Yet, the plaintiff alleges, the defendant performed a vaginal delivery anyway, and minor John Doe is now infected with HIV. *Id.* ¶¶ 11, 14.

The plaintiff alleges two additional specific actions that the defendant took during the delivery that increased the risk the child would be infected with HIV. *Id.* ¶ 17. First, she alleges that the defendant "fail[ed] to deliver the fetus in a timely manner, in particular, prior to the rupture of the membranes." *Id.* Second, she alleges that the plaintiff "fail[ed] to avoid using a fetal scalp electrode for monitoring, thereby breaching the skin and exposing the fetus's blood to the HIV virus [sic]." *Id.*

As a result of his infection with HIV, the child has suffered from HIV encephalopathy, as a result of which he "has suffered, and will continue to suffer, great and severe mental pain and suffering by virtue of the brain damage inflicted by the HIV virus [sic], and by virtue of embarrassment and humiliation in his personal relationships." *Id.* ¶ 6.

The plaintiff filed a prior action in 2009 relating to these same events against two corporations alleged to have provided medical services to the child both before and after birth. *See Carmichael v. Corrs. Corp. of Am.*, No. 09-383 (D.D.C. filed Feb. 26, 2009). That action was resolved through a settlement, as part of which the plaintiff negotiated a Medicaid lien with the District of Columbia on July 15, 2011. *See* Pl.'s Mem. at 1. The plaintiff avers that, prior to July 15, 2011, she and the District "had been in negotiations and discussions regarding the fact that additional lawsuits would be filed against the doctors, including Dr. West, who were involved with the birth of John Doe." *Id.* at 2. The plaintiff also avers that she "memorialized her intention to file lawsuits against the doctors involved in John Doe's birth in the Medicaid Lien Agreement itself." *Id.* The plaintiff argues that "[t]he District anticipated a possible lawsuit against Dr. West because the Medical [sic] Lien agreement referenced a potential

recovery from third parties, in particular the obstetricians involved in John Doe's birth, such as Dr. West." *Id.*

The plaintiff filed her instant Complaint on August 22, 2011, and on September 21, 2011, the plaintiff sent a "Notice of Intention to File Suit" to the defendant that was "given pursuant to the provisions of § 16-2802." *See id.* at 3; Def.'s Mem. at 2; *see also* Notice of Intention to File Suit, at 1 (dated Sept. 21, 2011), ECF No. 8-5. The defendant moved to dismiss the Complaint, or in the alternative for summary judgment, on November 21, 2011. *See* Def.'s Mem. at 6.

## II. STANDARD OF REVIEW

On a motion to dismiss for lack of subject-matter jurisdiction, the party claiming jurisdiction has the burden of demonstrating that it exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). As the Supreme Court has explained, the "district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Micei Int'l v. Dep't of Commerce*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) ("[T]wo things are necessary to create jurisdiction in an Article III tribunal other than the Supreme Court. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it." (emphasis, citations, and internal quotation marks omitted)). For this reason, a federal district court "has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Yueh-Lan Wang ex rel. Wong v. New Mighty U.S. Trust*, 841 F. Supp. 2d 198, 201 (D.D.C. 2012) (internal quotation marks omitted). When a court lacks subject matter

jurisdiction, it must dismiss the case. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 48 (D.D.C. 2011).

## III. DISCUSSION

The defendant contends that this case is a simple one: The plaintiff failed to comply with the statutory notice requirements, and therefore her complaint must be dismissed. Def.'s Mem. at 1. The plaintiff offers four separate arguments in rebuttal. Pl.'s Mem. at 5. First, she argues that D.C. CODE § 16-2802 does not apply to actions brought in federal courts. *Id.* at 6. Second, she argues that she has fully complied with § 16-2802. *Id.* at 7–8. Third, she argues that she made good-faith efforts to notify the defendant, which excuses any failure on her part to give notice under § 16-2802. *Id.* at 9. Finally, she argues that, in any event, the Court should waive strict compliance with § 16-2802 in the interests of justice. *Id.* at 10–11. For the reasons discussed below, the plaintiff's arguments are unavailing, and the Complaint must be dismissed for lack of subject-matter jurisdiction.

### A. D.C. CODE § 16-2802 Applies to This Court.

D.C. CODE § 16-2802 provides: "Any person who intends to file an action in the court alleging medical malpractice against a healthcare provider shall notify the intended defendant of his or her action not less than 90 days prior to filing the action." D.C. CODE § 16-2802(a). The MMA defines "court" as "the Superior Court of the District of Columbia." *Id.* § 16-2801(1).

According to Section 2802, the required pre-filing notice must "include sufficient information to put the defendant on notice of the legal basis for the claim and the type and extent of the loss sustained." *Id.* § 16-2802(b). The statute further provides that "[a] legal action alleging medical malpractice shall not be commenced in the court unless the requirements of this section have been satisfied." *Id.* § 16-2802(c). The notice and related requirements set forth in

Section 2802 are "part of an overarching statutory scheme intended to govern medical malpractice suits in the District of Columbia and to control the costs associated with such suits." *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 71 (D.D.C. 2009). "[F]or example, once such a suit is properly noticed and filed, the parties must participate in mediation before litigating further." *Id.* (citing D.C. CODE § 16-2821).

The MMA contains two safety valves that appear to guard against strict application of the pre-filing notice requirement in all cases. One portion of the statute states that "[u]pon a showing of a good faith effort to give the required notice, the court may excuse the failure to give notice within the time prescribed." D.C. CODE § 16-2802(a). Another portion of the statute instructs courts that "[n]othing indicated herein shall prevent the court from waiving the requirements of § 16-2802 upon a showing of good faith effort to comply or if the interests of justice dictate." *Id.* § 16-2804(b).

Although the plaintiff argues that § 16-2802 does not apply in cases filed outside D.C. Superior Court, this argument is unavailing. The plaintiff's narrow reading of the statute has been rejected in numerous instances. For example, the court in *Davis* held that § 16-2802 must be applied by this Court because "the District of Columbia statute at issue here cannot be construed to allow [the plaintiff] to avoid its pre-litigation requirements 'merely by filing a diversity action in federal court.'" 639 F. Supp. 2d at 72 (quoting *Bledsoe v. Crowley*, 849 F.2d 639, 643 (D.C. Cir. 1988)). Similarly, in *Diffenderfer v. United States*, the court found that failing to enforce the "mandatory notice requirement in a diversity jurisdiction case in federal court would subvert *Erie*'s twin aims—reducing forum-shopping and avoiding the inequitable administration of laws." 656 F. Supp. 2d 137, 139 (D.D.C. 2009) (citing *Hanna v. Plumer*, 380 U.S. 460, 468 (1965); *accord Brashear v. United States*, No. 11-1026, 2012 WL 759620, at *3–4

6

(D.D.C. Mar. 9, 2012) (finding D.C. CODE § 16-2802 applicable in federal court); *Coleman v. Wash. Hosp. Ctr. Corp.*, 734 F. Supp. 2d 58, 62 (D.D.C. 2010) (same).  The Court agrees with the reasoning of other courts that have considered this issue and holds that D.C. CODE § 16-2802 is applicable to actions filed pursuant to the diversity jurisdiction of federal courts.

### B.  The Plaintiff Has Not Complied with the Notice Requirement.

The plaintiff contends that, even if the notice requirement is applicable in this Court, she fully complied with its provisions.  The plaintiff argues that the defendant was on notice because the defendant is represented in this action by the District of Columbia, which "received oral and written notice of the lawsuit against Dr. West during the negotiation and settlement of the Medicaid lien" in plaintiff's prior action.  Pl.'s Mem. at 8.  The Court, however, does not agree that notice to the District of Columbia in a previous case fulfills the required notice to the individual defendant in this one.  Section 16-2802 plainly requires notice be given to "the intended defendant," D.C. CODE § 16-2802(a), and since the District of Columbia was never the "intended defendant" of the instant action, the plaintiff's provision of notice to the District was insufficient with respect to Dr. West.

Even assuming for the sake of argument that notice to the District complied with § 16-2802's requirement of notice to the "intended defendant," the plaintiff's notice to the District of Columbia of her claims against the defendant did not occur until she executed the Medicaid lien with the District on July 15, 2011, which "specifically refers to claims against the obstetricians involved in John Doe's birth."  *See* Pl.'s Mem. at 11.  The plaintiff initiated the instant lawsuit, however, on August 22, 2011, which was a mere thirty-eight days following the alleged notice— well shy of the ninety days' notice required by § 16-2802.

7

### C. The Plaintiff Did Not Make a Good-Faith Effort to Comply With the Notice Requirement.

The plaintiff argues that if the Court concludes that she did not comply with D.C. CODE § 16-2802, the Court should excuse any noncompliance based "'[u]pon a showing of good faith effort to give the required notice.'" *See* Pl.'s Mem. at 9 (quoting D.C. CODE § 16-2802(a)). The plaintiff states that "[t]he purpose behind D.C. CODE § 16-2802 was fulfilled prior to the filing of this lawsuit when months earlier the Medicaid lien was negotiated with the District through its Attorney General's Office which specifically reference obstetricians involved in John Doe's delivery." *Id.* at 10. The plaintiff further states in support of her argument that she made a good-faith effort to comply with § 16-2802 because, after filing suit, she voluntarily submitted medical records and expert reports to the District of Columbia and provided written notice directly to the defendant in order to aid resolution of her claims. *Id.* As noted *supra*, however, the signing of the settlement agreement on July 15, 2011 and the filing of the lawsuit on August 22, 2011 were only thirty-eight days apart and thus necessarily insufficient to satisfy the requirements of § 16-2802.

Even if negotiations over the Medicaid lien agreement occurred prior to July 15, 2011, the record is insufficient to establish whether the negotiations began at least ninety days prior to the filing of the Complaint or whether the substance of those negotiations on behalf of a party other than the defendant here addressed the prerequisites for suit set out in § 16-2802. Moreover, the plaintiff's written notice to the defendant and submission of expert records and medical reports all occurred *after* the plaintiff's Complaint was filed in the instant action. *See id.* This does not indicate a good-faith effort to comply with a statute designed to encourage *pre*-litigation resolution of medical malpractice claims. *See Davis*, 639 F. Supp. 2d at 71 (discussing the purpose of D.C. CODE § 16-2802).

### D. The Interests of Justice Cannot Excuse Non-Compliance.

The MMA allows a court to excuse noncompliance with the notice requirement "if the interests of justice dictate." D.C. CODE § 16-2804(b); *see also Lacek v. Wash. Hosp. Ctr. Corp.*, 978 A.2d 1194, 1199 (D.C. 2009) (describing D.C. CODE § 16-2804(b) as "a safety net that would permit the trial court to waive the notice requirement 'if the interests of justice dictate.'"); *see also Brashear*, 2012 WL 759620, at *5 (stating in dictum that the "interests of justice" provision should be read narrowly and "applie[d] only to circumstances similar to those enumerated in § 16–2804(a) (such as circumstances where the plaintiff lacks the information necessary to give the required notice)").

In the instant action, the interests of justice for the plaintiff are undoubtedly strong. The harm alleged is both grave and permanent. Consideration of the "interests of justice" requires a broader focus than just the circumstances of the plaintiff, however. The MMA is designed to ensure that the defendant in a medical malpractice action has critical pre-litigation information about the case and an opportunity for mediation before suit is filed.

Here, the District of Columbia is defending Dr. West, and the plaintiff asserts that "[d]efendant's counsel knew as early as July 15, 2011, when the Medicaid lien was negotiated, that Plaintiff was considering bringing a claim against Dr. West." *See* Pl.'s Mem. at 11. Thus, the plaintiff argues that the defendant was likely aware at least since July 2011, and possibly earlier given the previous litigation in this matter, that the plaintiff "was considering" suing for medical malpractice. *See id*. Even assuming such awareness on the part of the defendant, it falls short of the statutory requirements that the defendant be provided notice of the precise claim at issue and "the type and extent of the loss sustained" that is attributed to the defendant's actions. *See* D.C. CODE § 16-2802(b). The public interest in the remedial purposes of the MMA must

also be considered, namely fostering resolution of medical malpractice claims through mediation before triggering the commitment of judicial resources by the filing of a lawsuit.

The plaintiff relies heavily on an opinion from the D.C. Superior Court, in which the court declined to dismiss a case for failure to comply with the notice requirement. *See Powell v. Batipps*, 2010 CA 001260 M, slip op. at 7 (D.C. Super. Ct. Jan. 5, 2011), ECF No. 8-7. That case, however, is inapposite to the circumstances currently before the Court. Principally, the *Powell* court held that the plaintiff had in fact *complied* with D.C. CODE § 16-2802 by properly notifying the defendant prior to filing an earlier lawsuit involving the same parties and arising out of the same events. *Id.* Additionally, although the court did discuss the "interests of justice" in dicta, it discussed considerations not present here, such as the possibility that a defendant would "dodg[e] service of the notice," that requiring plaintiffs to file suit "on exactly the 90th day" is "very exacting," and that the defendants "made no effort to meet the purpose of the Act by engaging in discussions that were required by the Act." *Id.* at 7–8.

Thus, considering the totality of the circumstances presented in this case—the interests of the plaintiff and the defendant, as well as the public interest reflected in the remedial purposes of the MMA to foster pre-litigation resolution of medical malpractice claims—the interests of justice tip in favor of the defendant. Because this is a case in which the plaintiff possessed all of the information necessary to give the required notice, and because there is only the scantest indication that the plaintiff engaged in good-faith attempts to provide timely notice or engage in the pre-litigation mediation required under § 16-2801, the Court will not apply § 16-2804(b)'s "interests of justice" exception to waive compliance with § 16-2802.

### E. Failure to Comply with D.C. CODE § 16-2802 Deprives the Court of Subject-Matter Jurisdiction

Although the defendant implies that her motion to dismiss is based on FED. R. CIV. P. 12(b)(6), *see* Def.'s Mem. at 2–3, the defendant also clearly states that "based on Plaintiff['s] failure to comply with D.C. CODE § 16-2802 this Court lacks *subject matter jurisdiction*," *see id.* at 6 (emphasis added). Courts interpreting § 16-2802 have held that non-compliance with the notice provision is a defect in subject-matter jurisdiction, rather than a defect in the plaintiff's claim, and thus does not require dismissal with prejudice. Indeed, the D.C. Court of Appeals recently affirmed the principle that failure to comply with § 16-2802 deprives a court of subject-matter jurisdiction. *See Lacek*, 978 A.2d at 1196 (affirming Superior Court's dismissal for lack of subject-matter jurisdiction because plaintiff failed to comply with § 16-2802); *see also Coleman*, 734 F. Supp. 2d at 63 ("[Plaintiff's] failure to notify defendants timely deprives this Court of subject matter jurisdiction."); *Davis*, 639 F. Supp. 2d at 72 (dismissing complaint for failure to comply with § 16-2802 without prejudice because "[n]othing in Section 2802 requires or supports dismissal *with* prejudice" (collecting cases)). *But see Diffenderfer*, 656 F. Supp. 2d at 138-39 ("[A] plaintiff who has not complied with the notice requirement of § 16-2802(a) has not stated a claim upon which relief can be granted.")

Under FED. R. CIV. P. 41(b), a dismissal for lack of jurisdiction does not operate as an adjudication on the merits and thus does not bar the claim from being re-filed in the future if the jurisdictional defect is cured. *See* FED. R. CIV. P. 41(b) ("[A]ny dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."). In the instant case, the Court agrees with the majority of courts to have considered this issue and holds that non-compliance with § 16-2802(a) is a defect in subject-matter jurisdiction. Accordingly, the Court grants the defendant's motion

to dismiss the Complaint without prejudice and with leave to re-file if the jurisdictional defect is cured.

## IV.  CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss the Complaint or, in the Alternative for Summary Judgment, ECF No.7, is GRANTED.  An Order consistent with this Memorandum Opinion will be issued.

DATE: July 27, 2012

                                                /s/ *Beryl A. Howell*
                                                BERYL A. HOWELL
                                                United States District Judge